UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRADISH JOHNSON CO., LIMITED                CIVIL ACTION
individually and as representative of
all those similarly situated

                                            NO. 23-7363

VERSUS

TENNESSEE GAS PIPELINE                      SECTION: "J"(3)
COMPANY, LLC ET AL.

## ORDER & REASONS

Before the Court is a *Motion for Class Certification* **(Rec. Doc. 103)** filed by

Plaintiff Bradish Johnson Co., Limited. Defendants Tennessee Gas Pipeline

Company, L.L.C. ("TGP"); Kinetica Energy Express, LLC; and Kinetica Partners,

LLC collectively filed an opposition to the motion. (Rec. Doc. 111). Plaintiff filed a

reply. (Rec. Doc. 123). The Court held a class certification hearing on February 5,

2026. (Rec. Doc. 133), wherein the Court heard testimony from Plaintiff's expert and

oral argument from all parties. Following the hearing, Plaintiff submitted a *Proposed*

*Findings of Fact and Conclusions of Law* (Rec. Doc. 136) in connection with their

motion. Defendants submitted supplemental briefing. (Rec. Doc. 139). Having

considered the motion and memoranda, the record, the parties' oral arguments, and

the applicable law, the Court finds that Plaintiff's motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation concerns an alleged breach of contract between landowners and pipeline companies. In the 1950s TGP began installing pipelines across the marshy lowlands of Southeast Louisiana. (Rec. Doc. 1). Pertinent to this case are three pipelines: "TGP 500-1, TGP-500-2, and TGP 527A-100." (Rec. Doc. 1. 66–77).

These three pipelines cover over 280 miles of privately owned property. Consequently, TGP executed more than 100 right-of-way agreements ("ROWs") with as many private landowners. The ROWs gave TGP the right to install and maintain the pipelines. More importantly to this dispute, the ROWs also gave TGP the right to dredge flotation canals to facilitate pipeline installation and maintenance.

The ROWs contain varying language concerning canal width. Some contracts provided that the canals were "not to exceed" a certain width. (Rec. Doc. 103-29, at 270; Rec. Doc. 103-31, at 57; Rec. Doc. 103-33, at 104.) Others allowed Defendants to dredge canals having a "maximum width" or an "approximate[]" width. (Rec. Doc. 103-29, at 158; Rec. Doc. 103-29, at 328; Rec. Doc. 103-29, at 354; Rec. Doc. 103-31, at 116; Rec. Doc. 103-33, at 1, 7). And many contracts did not specify any canal width. (Rec. Doc. 103-29, at 191; Rec. Doc. 103-29, at 198; Rec. Doc. 103-31, at 52; Rec. Doc. 103-31, at 123; Rec. Doc. 103-33, at 100).

The ROWs also contained varying language addressing canal erosion. Some contracts required the canals to be filled in when running adjacent to any streams or bodies of water to prevent erosion. (Rec. Doc. 103-29, at 286). Others required the pipeline companies to install and maintain protective structures along the canal to

2

prevent erosion. (Rec. Doc. 103-29, at 107–08). Still, others allowed the canals to be "left open" without addressing erosion at all. (Rec. Doc. 103-29, at 191).

Over the last 70 years, these canals have widened considerably. Plaintiff Bradish Johnson Co. Limited, a private landowner that executed three ROWs at issue, seeks to hold TGP responsible for this widening. Plaintiff alleges that TGP had a duty to maintain these canals at their originally constructed width but failed to do so. In 2010, TGP sold a portion of its pipelines along with the attendant servitudes to Kinetica. Plaintiff alleges that Kinetica also did not maintain these canals.

Plaintiff seeks to represent a class of all private landowners that executed ROWs with Defendants concerning the three pipelines at issue. (Rec. Doc. 103-1, at 14). Plaintiff argues that, under all the ROWs, Defendants have a uniform obligation to maintain the pipeline canals to prevent them from widening. (Rec. Doc. 103-1, at 19). Plaintiff seeks a holding from this Court that reflects such an obligation, as well as an order for Defendants to repair the canals. *Id.* In the alternative, Plaintiff seeks an award of damages equal to the cost of installing and maintaining protective structures along the canals as well as property loss damages. *Id.* at 52.

Plaintiff initially filed its Class Action Petition in state court. (Rec. Doc. 1-1, at 1). However, Defendants subsequently removed this suit to federal court. (Rec. Doc. 1). After extensive briefing from all parties, the Court is ready to rule.

3

## LEGAL STANDARD

Rule 23 governs whether a proposed class falls within the limited exception to "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "A proposed class suit must meet all of the requirements of Rule 23(a) and fit into one of the categories of Rule 23(b)." William B. Rubenstein, et al., 1 Newberg and Rubenstein on Class Actions § 1:2 (6th ed. 2024). The proposed class must also satisfy Rule 23's implicit requirements.

The Fifth Circuit, like other circuits, has incorporated an additional requirement or an implicit requirement of class certification—that the class be "definite" or "ascertainable." William B. Rubenstein, et al., 1 Newberg and Rubenstein on Class Actions § 3:1 (6th ed. 2024); *see also Braidwood v. Mgmt., Inc. v. Equal Emp't Opportunity Comm'n,* 70 F.4th 914, 933 (5th Cir. 2023) ("The Fifth Circuit has also articulated an 'ascertainability' requirement for Rule 23 class actions."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445, n.3 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.").

After the implicit requirement is satisfied, four prerequisites must be met by all classes: numerosity, commonality, typicality, and adequacy of representation. Fed.

4

R. Civ. P. 23(a). The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 have been satisfied. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir. 2003). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Under Rule 23(a)(1), certification is only appropriate where "the class is so numerous that joinder of all members is impracticable." "[A] plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). But, the Fifth Circuit has repeatedly noted that "the number of members in a proposed class is not determinative of whether joinder is impracticable." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). Rather, "a number of facts other than the actual or estimated number of purposed class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

Pursuant to Rule 23(a)(2), there must be "questions of law or fact common to the class." The Supreme Court has explained that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'" *Dukes*, 564 U.S. at 349 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Dissimilarities among class members should be considered to determine

whether a common question is truly presented. *Id.* at 359. Even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Id.* at 350, 359.

Rule 23(a)(3) provides that "the claims or defenses of the representative parties [must also be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry rests "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims." *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Moreover, Rule 23(a)(4) requires the party seeking certification to show that "the representative parties will fairly and adequately protect the interests of the class." This standard "requires the class representative to possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation. *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482–83 (5th Cir. 2001). The adequacy requirement "also factors in competency and conflicts of class counsel." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997).

Rule 23(b)(1)(A) provides for class certification where "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. Fed. R. Civ. Proc. 23(b)(1)(A).

Rule 23(b)(2) allows for class certification upon Plaintiff proving that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. Proc. 23(b)(2). This sub-section of Rule 23 can be divided into two parts: first, the contested conduct is based upon grounds applicable to the entire class; and second, final injunctive relief is requested against the party opposing the class. *Mamula v. Satralloy, Inc.*, 578 F.Supp. 563, 571–72 (S.D.Ohio 1984).

Rule 23(b)(3) class certification is permitted only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623. "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Mullen*, 189 F.3d at 626 (quoting *Jenkins*, 782 F.2d at 472).

To determine "whether legal issues common to the class predominate over individual issues," a court must consider how the case will be tried. *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 739 (5th Cir. 2023) (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)). This inquiry "entails identifying the substantive issues that will control the outcome, assessing

which issues will predominate, and then determining whether the issues are common to the class." *Id.*

Generally, individualized damages calculations will not preclude a finding of predominance. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (citation omitted). However, "[w]here the plaintiffs' damage claims focus almost entirely on facts and issues specific to individuals rather than the class as a whole, the potential exists that the class action may degenerate in practice into multiple lawsuits separately tried. In such cases, class certification is inappropriate." *O'Sullivan*, 319 F.3d at 744–45. Overall, the predominance standard under Rule 23(b)(3) is "far more demanding" than the commonality requirement under Rule 23(a). *Amchem*, 521 U.S. at 623–24.

Finally, a class action must be the superior method for adjudicating the controversy. The district court must compare and "assess the relative advantages of alternative procedures for handling the total controversy." *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note to 1966 Amendment). The superiority analysis is fact-specific and varies depending on the circumstances of each case. *Id.* Among the factors for the court to consider are

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23.

## DISCUSSION

Plaintiff moves to certify the following class:

> All natural and juridical persons who own immovable property within the Louisiana coastal zone that is subject to pipeline right of use servitudes granted to, or pipeline right of use servitudes procured by expropriation in favor of, Tennessee Gas Pipeline Company, LLC, Kinetica Energy Express, LLC, and Kinetica Partners, LLC, and/or their predecessors in interest, pursuant to which the pipelines denominated as TGP 500-1, TGP 500-2, and TGP 527A-100 were constructed in flotation canals.

(Rec. Doc. 103-1, at 14). Plaintiff primarily seeks a declaration from this Court that Defendants have a duty to maintain the canals. Plaintiff argues that all Rule 23(a) requirements are met as well as the requirements of Rule 23(b)(1)(A), Rule 23(b)(2), and Rule 23(b)(3).

### I.    Commonality

Commonality is the "crux of this case," and it is where the Court will begin its analysis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The Supreme Court heightened the requirements of commonality following its decision in *Walmart v. Dukes*. The Court explained that commonality requires Plaintiff to demonstrate that the class members have "suffered the same injury." *Id.* "After *Walmart*, Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally raises common questions.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012) (quoting *Walmart*, 564 U.S. 338, 349). Plaintiff cannot establish that their claims can be productively litigated at once, "merely by alleging a violation of the same legal provision by the same defendant." *Id.* Instead, Plaintiff

9

must show a common issue of fact or law whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Walmart*, 564 U.S. 338, 350. As the Court explained,

> [w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).

Plaintiff argues that the class is unified by two common questions: "(1) Whether Defendants, as the owners of the dominant estate of a right of use servitude, have an obligation under Louisiana law not to injure or aggravate the servient estate?," and, if so, "(2) Whether Defendants' use of the servitude constitutes aggravation?" (Rec. Doc. 103-1 at 17–18).

### A. Obligations of the Dominant Estate

Plaintiff argues that the Court can answer the first question affirmatively for all the ROWs because none of them exonerate Defendants from abiding by Louisiana law, and all the ROWs are silent on Defendants' obligation to perform canal maintenance. (Rec. Doc. 103-1, at 30). According to Plaintiff, because all the ROWs lack this information, Louisiana suppletive law applies to all the ROWs within the class, and this suppletive law gives Defendants a common and uniform obligation not to injure or aggravate the servient estate, requiring Defendants to maintain all canals to prevent erosion. *Id.*

Defendants argue that every ROW is not silent on the issue of canal maintenance and erosion prevention. (Rec. Doc. 139 at 4). They argue that there are varying terms amongst the ROWs that create material differences, such that the Court cannot certify the class. *Id.*

This is a breach-of-contract case. Louisiana law recognizes that parties have the "freedom of contract" meaning that they "have the right and power to construct their own bargains." *La. Smoked Prod., v. Savoie's Sausage & Food Prod., Inc.*, 96-1716 (La. 7/1/97), 696 So. 2d 1373, 1380. When the parties exercise this freedom, the "contract itself is the law between the parties" and "defines their respective rights and obligations." *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96), 702 So. 2d 648, 666. Courts must interpret the contract based on the parties' intent, because it is "the intent of the parties which determines whether an obligation was assumed." *Boisseau v. Vallon & Jordano*, 141 So. 38, 40 (La. 1932).

To determine the obligations owed between the contracting parties, the analysis begins with "the language of the contract itself." *Mac Sales, Inc. v. E.I. du Pont de Nemours & Co.*, 24 F.3d 747, 751 (5th Cir. 1994). If the contract's words are "clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written." *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 897 (5th Cir. 2022). However, a contract may be ambiguous because it "lacks a provision bearing on [a particular] issue" or "the language used . . . is uncertain." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 436 (5th Cir. 2013) (alteration in original). If so, the parties' intent, which is "an issue of

11

fact," must be "inferred from all of the surrounding circumstances." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

As the party seeking certification, Plaintiff "simply cannot advance a single collective breach of contract action on the basis of multiple different contracts." *Broussard v. Meineke Disc. Muffler Shops, Inc.* 155 F.3d 331, 340 (4th Cir. 1998). Instead, Plaintiff must prove to the Court that the contracts are "materially similar." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.* 601 F.3d 1159, 1171 (11th Cir. 2010); *accord Parker v. Bank of Am. N.A.*, 99 F. Supp. 3d 69, 82 (D.D.C. 2015); This requires Plaintiff to prove that all of the putative class contracts are truly silent on canal maintenance.  Plaintiff attaches a sampling of the putative class contracts for this Court to review. Upon review of this sampling, the Court finds language in many of these contracts that preclude Defendants from having a duty to maintain the width of the canals to prevent erosion.

First, at least 38 of the attached ROWs allow the canal to be "filled in or left open at the option of Grantee." (Rec. Doc. 103-29, at 112, 128, 145, 177, 191, 260, 278, 314, 315, 319, 321, 323, 325, 328, 330, 332, 334, 336, 338, 342, 344, 347, 349, 354; Rec. Doc. 103-31, at 49–50, 52, 57, 59, 86, 94, 110, 112, 116, 118, 120, 123, 127, 130). The Fifth Circuit has interpreted this language as precluding the pipeline company from having any duty to maintain the canals to prevent erosion. *Ryan v. S. Nat. Gas Co.*, 879 F.2d 162, 164 (5th Cir. 1989) (holding that "[t]he plain words of the contract gave [defendant pipeline company] the option to leave the canal 'open.' This obviously gave [defendant pipeline company] the right to refrain from damning the canal."; *see also,*

12

*St. Martin v. Quintana Petroleum Corp.*, No. 98-2095, 2001 WL 175226, at \*2–3 (E.D. La. Feb. 21, 2001) (Berrigan, J.), *aff'd*, 32 F. App'x 127 (5th Cir. 2002). Further, of those contracts, at least 26 provide no language limiting the canals' width, which "evince[s] an understanding between the parties that the Defendants were not obligated to take any action to maintain the canals." *Vintage Assets, Inc. v. Tenn. Gas Pipeline Co. L.L.C.*, No. 16-713, 2017 WL 3601215, at \*7 (E.D. La. Aug. 22, 2017 (Milazzo J.) (citing *Quintana*, 2001 WL 175226, at \*2–3).

Plaintiff urges this Court to follow the Fifth Circuit's decision in *Terrebonne Par. Sch. Bd. v. Colum. Gulf Transmission Co.* 290 F.3d 303, (5th Cir. 2002). There, the Court ignored the "left open" language in a servitude agreement. The Court distinguished *Ryan* and explained that

> [t]he best factual support for our *Ryan* holding was *not* the servitude agreement's provision that the pipeline canal could be left "open," but rather, as the district court noted, the pipeline owner's signature on and the landowner's acceptance of a "letter agreement" that bound the former to pay the latter $400 per acre of land encroached on by the canal in the event that it widened.

*Id.* at 315. According to Plaintiff, this newer decision compels this Court to ignore the "left open" language in the servitude agreements and find that the contracts are materially similar because they all lack an explicit provision addressing canal maintenance. Then, as Plaintiff contends, the Court can hold that Louisiana suppletive law applies and imposes a duty on Defendants to maintain the canals.

Plaintiff's reliance on *Columbia Gulf* is misplaced. *Columbia Gulf's* application to this case would not answer the duty question. *Columbia Gulf* did not hold that Louisiana suppletive law applied to the servitudes and imposed a duty on the pipeline

13

companies to maintain the canals. Rather, the panel merely found that it was erroneous for the district court to grant summary judgment on the grounds that there was no duty. *Id.* at 317. The Court analyzed the evidence just enough to find that the servitude language did not expressly dispose of the duty to maintain the canals. *Id.* at 315. As the Court explained, "we view these provisions as being in internal conflict, **to whatever extent they bear on the question**" of whether the pipeline companies have a duty to maintain the canals. *Id.* at 314. (emphasis added). The Court suggested that the answer to the duty question relies on the parties' intent, which is a factually specific inquiry that goes beyond the servitude language.[1] Accordingly, applying *Columbia Gulf* would not permit this Court to hold that Louisiana suppletive law imposes a uniform duty on Defendants to maintain the canals for every individual contract.

Second, to the extent that *Columbia Gulf* conflicts with *Ryan*, it is non-binding. In *Ryan*, the appellate court never discussed the letter agreement between the parties. That discussion was found only in the district court. *Ryan v. S. Nat. Gas Co.*, No. 86–794, 1987 WL 19044, \*2–4 (E.D. La. Oct. 27, 1987). Instead, the Court's panel held that the "**plain words of the contract**" relieved the Defendant pipeline company from a duty to maintain the canals. *Ryan*, 879 F.2d at 164 (emphasis added). The Court considers *Ryan's* clear and unambiguous holding as evidence that the

---

[1] *See Id.* at 315 n. 28. The defendants in *Columbia Gulf* also argued that they had no duty to maintain the canals based on the parties' intent. The defendants claimed that the plaintiffs knew about the erosion for quite some time but did nothing, evincing an understanding between the parties that the defendants had no duty to maintain the canals. The Court rejected this argument solely because it was uncertain as to whether the plaintiffs had notice of the erosion. The Court did not find such evidence to be irrelevant to the duty question.

panel relied on the express language in the servitude agreement, rather than the separate letter agreement between the parties, to render its decision.

By holding that the express "left open" language in the servitude agreement does not dispose of the duty to maintain the canal, the later panel in *Columbia Gulf* conflicts with and seeks to overrule *Ryan*. When two panels conflict, "the earlier one controls" and the later rendered opinion "may not overrule" the other. *Texaco Inc. v. La. Land & Expl. Co.*, 995 F.2d 43, 44 (5th Cir. 1993). "[N]o panel is empowered to hold that a prior decision applies only on the limited facts set forth in that opinion." *United States v. Smith*, 354 F.3d 390, 399 (5th Cir. 2003). This Court's opinion is strengthened by the Fifth Circuit's later decision in *Quintana*, where the Court found *Ryan* controlling despite there being no letter agreement between the parties. *Quintana*, 32 F. App'x at 127 (explaining that their "decision in *Ryan* . . . controls the outcome of this appeal.") Accordingly, the Court finds *Ryan* to be the controlling precedent, and the panel's conflicting opinion in *Columbia Gulf* is not binding on this Court.

Applying *Ryan*, the Court finds that there are material differences in these contracts such that the common crucial question cannot be answered on a class-wide basis. It is "impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question" of whether Defendants have a duty to maintain the canals in every contract. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011). Plaintiff must prove that all the ROWs at issue are materially similar. *Flecha v. Medicredit*, Inc., 946 F.3d 762, 768 (5th Cir. 2020)

15

(explaining that "courts must certify class actions based on proof, not presumptions.") Plaintiff fails to meet this burden. For this reason alone, the Court finds that commonality has not been satisfied.

Additionally, there are several contracts at issue which expressly address canal erosion. For example, at least one contract required the pipeline canal to be "filled in adjacent to any streams or bodies of water crossed so as to prevent erosion." (Rec. Doc. 103-29, at 158). Another contract required Defendants to install plugs and a levee at certain locations along to the canal "to protect [the landowner's] property from erosion." *Id.* at 154. One contract required Defendants to install and maintain dams and other protective structures "to prevent undue erosion." *Id.* at 235. Another contract required Defendants "to exercise maximum care and caution to prevent any erosion." *Id.* at 289. At oral argument and in subsequent briefing, Defendants claim that there are at least three contracts that required them "to maintain said canal . . . in such condition as to prevent any and all erosion." (Rec. Doc. 139, at 5 n. 9).

These express provisions impose on Defendants varying duties to address canal erosion. The Court interprets these provisions as evidence that the landowners not only contemplated that the canals may widen but also had the power to impose duties on Defendants to address their concerns. *See Quintana*, 2001 WL 175226, at *3 (explaining that landowners who "were parties to these types of contracts knew how to protect their rights and how to craft language reflecting the exact nature of the rights and obligations the right of way was meant to bestow.") The Court cannot impose additional obligations on Defendants to maintain the canals to prevent

16

erosion when they have expressly addressed this issue in their contracts. *See Conmaco/Rector L.P. v. L & A Contracting Co.*, No. 12-2337, 2014 WL 1796651, \*12 (E.D. La. May 6, 2014) (reasoning that the "imposition of certain obligations under [the contract] implies the exclusion of all other obligations.") Based on the materially different contractual language, the Court cannot find commonality.

## II.    Causation

Even if the Court were to ignore the materially different language amongst the contracts and hold that Defendants have a duty to maintain the canals, there would be serious causation issues that preclude class certification. "Causation is an essential element of" contract claims. *Fla. Gas. Transmission Co. v. Tex. Brine Co.*, 18-0907 (La. App. 1 Cir. 8/29/19), 282 So. 3d 256, 260). To recover for breach of any of the contracts, Plaintiff must prove that Defendants' breach "**caused** damages." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (emphasis added). In other words, Plaintiff must show that Defendants' failure to maintain the canals caused them to widen.

Plaintiff and Defendants' experts agree that the issue of causation will vary from "property to property." Lopez Dep. 142:3–8 (Rec. Doc. 103-50, at 142); *accord* Byrnes Aff. ¶¶ 17–22 (Rec. Doc. 111-9, at 4–9). At the class certification hearing, Plaintiff's expert Dr. Andrus admitted that when developing a restoration plan the "first step is to evaluate causation." (Rec. Doc. 139-1, at 66). Dr. Andrus also admitted that there are "multiple causes of erosion" such as nature, landowners' use of their property, individuals using boats in the canals, other canals dredged on the property,

17

and the leveeing of the Mississippi River. (Rec. Doc. 139-1, at 67–68). Dr. Andrus further admitted that there has been no evaluation of what caused the erosion of any of the properties along the 280 miles of pipeline in this case. *Id.* at 67.

Based on this expert testimony, the Court finds that causation is a highly individualized issue that will predominate if this case is tried. The pipelines traverse over 280 miles of land with varying geographical features and manmade constructions. Many factors can cause the canals to widen, and Plaintiff has not shown the Court how it can exclude these factors and hold Defendants liable for the portion of canal widening that they exclusively caused on a class-wide basis. Causation will likely be hotly contested on each individual parcel and will require a highly factually specific inquiry. *See Columbia Gulf*, 290 F.3d at 317 (explaining that "[w]hether and to what extent the defendants' use of the canals **caused** the deterioration of the [landowner]'s property and aggravated the servient estate are questions to be determined in the light of this case's particular circumstances.") (emphasis added); *see also Id.* at n.4. (explaining that causation is a "fact-intensive inquiry.") Plaintiff presents no analogous case which certified a class with causation issues of this magnitude.[2] Accordingly, the Court finds that individualized issues of causation preclude class certification.

---

[2] In support of its argument that individualized causation issues will not predominate, Plaintiff relies exclusively on "single episode" cases. These cases all concerned a single incident and its impact on the surrounding environment. *Prantil v. Arkema, France S.A*. No. 17-2960, 2022 WL 1570022 (S.D. Tex. May 18, 2022) (release of wastewater from two tanks during a hurricane). *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (settlement class concerning an oil spill and explosion); *Turner v. Murphy Oil USA, Inc.* 234 F.R.D. (E.D. La. 2006) (single incident oil storage tank spill); *Slocum v. Int'l Paper Co.*, No. 16-12563, 2019 WL 2192099 (E.D. La. May 21, 2019) (Fallon J.) (single emission release of one tank on a single day). Single-incident classes are far easier to certify because causation in those cases involves limited individualized variables. Courts in this Circuit have repeatedly rejected attempts to certify classes in cases, like this one, that concern property damage over several years. *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 379 (5th Cir. 2016) (denying certification in a multi-year

### III. Breach

Breach of contract is another individualized issue. Defendants have varying duties under their individual contracts. As discussed, some of the contracts required Defendants to maintain plugs and damns along the canal, while other contracts provided no such duty. Thus, if Plaintiff proved that Defendants failed to maintain these plugs, that would establish breach of some contracts but not others.

Plaintiff argues that Defendants had a common policy of failing to maintain these plugs. But Defendants contest that argument with testimony from TGP representative Cyrus Harper, who identified at least 120 instances of plug and bulkhead maintenance performed on just one landowner's property. (Rec. Doc. 103-6, at 116–117). Like causation, breach of contract is a factually intensive issue that will be hotly contested. Accordingly, the Court finds that issues of breach also preclude class certification.

### IV. "Issues Class"

As a final argument to support class certification, Plaintiff argued at the hearing that the Court could certify an "issues class" and answer the limited legal question of whether Louisiana suppletive rules for predial servitudes applies to these contracts and issue a declaratory judgment reflecting that decision. (Rec. Doc. 139-1, at 111–113).

---

property damage case and explaining that single episode cases are inapplicable). *Itech-Bendeck v. Waste Connections*, 349 F.R.D. 106, 126 (E.D. La. 2025) (Morgan J.) (denying certification in a multi-year property damage case and finding that individualized causation issues predominate; *Bush v. Clean Harbors Colfax LLC*, No. 22-2026, 2024 WL 4518350, at *5 (W.D. La. Aug. 5, 2024) ("Unlike *In re Deep Water Horizon*, the allegations [here] do not arise from a single event and the damages alleged are not distinct from the issues of causation and liability.")

However, Plaintiff must still meet the requirements of Rule 23(a) and Rule 23(b), which it has failed to do. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir. 1996). Further, Plaintiff cannot seek a declaratory judgment that overlaps with the allegations underlying their breach of contract claim. *See Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *6 (5th Cir. Sept. 20, 2021). (dismissing the plaintiff's claim for declaratory judgment because it "overlaps with the allegations underlying its breach of contract claim.")

Moreover, there would still be numerous individualized issues that preclude class certification. First, the declaratory relief that Plaintiff seeks shows that the duty would be highly individualized. If the Court finds that Louisiana suppletive law applies, Plaintiff seeks a declaration that Defendants owe an implied duty to prevent the canals from widening "beyond the canal width specified in the [contract], or if none is specified, the width necessary to achieve the primary purpose of the [contract]." (Rec. Doc. 123, at 3). Most of the contracts at issue do not specify any canal width. And Plaintiff has failed to provide the Court with any objective, class-wide methodology to determine the "width necessary to achieve the primary purpose" of each contract. What is necessary at one point along the 280 miles of pipeline would likely be different at another point along the pipeline. Thus, each property would have to be individually analyzed to determine the necessary canal width.

Second, Plaintiff's suggestion that the Court can decide the duty issue on "cross motions for summary judgment" runs counter to Louisiana law. As the Louisiana Supreme Court has explained, whether a pipeline company has an implied duty

under a right-of-way contract to maintain the canal is an inherently fact specific issue that is ordinarily inappropriate for summary judgment. *Morgan City Land & Fur Co. v. Tenn. Gas Pipeline Co.*, 2021-00704 (La. 10/12/21), 325 So. 3d 1051, 1052 (vacating the Fourth's Circuit's decision on summary judgment that there is an "implied duty" because that issue is "intertwined with the facts.")

Lastly, Plaintiff oversimplifies the duty question. Plaintiff has not considered situations where the parties might have orally or tacitly modified their contracts. The parties can modify their contracts in writing, orally, or "by [their] conduct," including "silence" and "inaction." *Alonso v. Westcoast Corp.*, 920 F.3d 878, 886 (5th Cir. 2019). In a similar state action against TGP, at least one court found that the parties orally and tacitly modified their contracts with respect to the number of plugs required and the allowable canal width. *See* Reasons for Judgment at 12–15, *P&A Miller, LLC v. Tenn. Gas Transmission Co.*, Nos. 10-19359, 10-19519 (La. 38th Jud. Dist. Ct., Cameron Par., Jan. 15, 2025) (Rec. Doc. 111-2, at 12–15). Bradish offers no way for the Court to determine all of the parties' contractual modifications in one stroke. The Court cannot make this determination on a class-wide basis.

In sum, Plaintiff seeks an answer to a question that would fail to propel this case forward. Numerous individualized factual issues abound. Plaintiff cannot circumvent these issues with Louisiana suppletive law. The class cannot be certified.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Class Certification*

**(Rec. Doc. 103)** is **DENIED**.

New Orleans, Louisiana, this 1st day of July 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

22